UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER ZEPPEIRO,<br><br>        Plaintiff,<br><br>        vs.<br><br>GREEN TREE SERVICING, LLC;<br>NORTHWEST TRUSTEE SERVICES,<br>INC. and DOES 1 to 10 inclusive,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. CV 14-01336 MMM (JCx)<br><br>ORDER GRANTING DEFENDANT'S<br>MOTION TO DISMISS |

On December 3, 2013, Peter Zeppeiro filed this action against Green Tree Servicing, LLC ("Green Tree"), Northwest Trustee Services, Inc. ("Northwest"), and various fictitious defendants in Ventura Superior Court, alleging claims for wrongful foreclosure, violation of the California Homeowner's Bill of Rights, California Civil Code § 2924.11, and violation of California's Unfair Competition law ("UCL"), California Business & Professions Code § 17200.[1] On December 17, 2013, Northwest filed a declaration of non-monetary status in state court pursuant to Civil Code § 2924*l*.[2]

---

[1]Notice of Removal, Docket No. 1 (Feb. 21, 2014), Exh. 1 (Complaint).

[2]Removal, Exh. 4 (Northwest's Declaration of Non-Monetary Status ("DNMS")). Section 2924*l* provides, in pertinent part: "In the event that a trustee under a deed of trust is named in an action or proceeding in which that deed of trust is the subject, and in the event that the trustee maintains a

1   Zeppeiro filed a timely objection to the declaration of non-monetary status on December 30, 2013.[3]  On

2   January 24, 2014, Green Tree acknowledged receipt of the summons and complaint, which Zeppeiro

3   had mailed to it on December 9, 2013.[4]  On February 12, 2014, Northwest filed a motion to strike

4   Zeppeiro's objection to the declaration of non-monetary status.[5]

5       Before the state court could rule on the motion to strike, Green Tree removed the action to this

6   court on February 21, 2014, invoking the court's diversity jurisdiction.  The same day, Northwest filed

7   a pleading in which it consented to Green Tree's removal.[6]  On February 28, 2014, Green Tree filed a

8   motion to dismiss,[7] which Zeppeiro opposed.[8]  On April 10, 2014, Zeppeiro filed a motion to remand,[9]

9

10

11  reasonable belief that it has been named in the action or proceeding solely in its capacity as trustee, and
    not arising out of any wrongful acts or omissions on its part in the performance of its duties as trustee,

12  then, at any time, the trustee may file a declaration of nonmonetary status. . . .  The parties who have
    appeared in the action or proceeding shall have 15 days from the service of the declaration by the trustee

13  in which to object to the nonmonetary judgment status of the trustee.  Any objection shall set forth the
    factual basis on which the objection is based[.] . . .  In the event that no objection is served within the

14  15-day objection period, the trustee shall not be required to participate any further in the action or
    proceeding[.] . . .  In the event of a timely objection to the declaration of nonmonetary status, the trustee

15  shall thereafter be required to participate in the action or proceeding."  CAL. CIV. CODE § 2924*l*(a), (c),
    (d), & (e).

16

17  [3]Removal, Exh. 6 (Plaintiff's Objection to Defendant Northwest Trustee Services, Inc.'s
    Declaration of Non-Monetary Status).

18

19  [4]*Id.*, Exh. 2 (Green Tree's Acknowledgment of Receipt of Service).

20  [5]*Id.*, Exh. 7 (Northwest Trustee Services Inc.'s Motion to Strike Plaintiff's Objection to
    Declaration of Non-Monetary Status).

21

22  [6]Defendant Northwest Trustee Services, Inc.'s Consent for Removal, Docket No. 6 (Feb. 21,
    2014).  The parties subsequently filed a stipulation concerning Northwest's non-monetary status.  (See

23  Stipulation re: Non-Monetary Status of Northwest Trustee Services, Inc., Docket No. 30 (Aug. 14,
    2014)).  On August 18, 2014, pursuant to this stipulation, the court recognized Northwest's non-

24  monetary status under Civil Code § 2924l.  (Order re: Non-Participation of Defendant Northwest Trustee
    Service, Inc., Docket No. 31 (Aug. 18, 2014)).  As a result, Northwest is not required to participate in

25  the action unless ordered to do so by the court, but is bound by whatever order or judgment is issued.

26  [7]Motion to Dismiss, Docket No. 9 (Feb. 28, 2014).

27  [8]Opposition to Defendant's Motion to Dismiss, Docket No. 13 (Apr. 23, 2014).

28  [9]Motion to Remand Case to Ventura County Superior Court, Docket No. 12 (Apr. 10, 2014).

1    which Greentree opposed.[10]  The court denied Zeppeiro's motion to remand, and granted Green Tree's

2    motion to dismiss on June 16, 2014.[11]

3         On July 3, 2014, Zeppeiro filed a first amended complaint alleging claims for "wrongful

4    foreclosure in violation of § 2924(a)(6)" and violation of California's UCL.[12]  Green Tree moved to

5    dismiss the amended complaint on July 18, 2014.[13]  The court granted the motion in full on October 17,

6    2014.  It dismissed Zeppeiro's wrongful foreclosure claim with prejudice, but noted that he might be

7    able to allege an independent claim for violation of § 2924(a)(6).  The court therefore granted him leave

8    to amend his complaint to state claims for violation of § 2924(a)(6) and the UCL.[14]

9         On October 30, 2014, Zeppeiro filed a second amended complaint.[15]  Defendants filed a motion

10

11

12

13   _____

14        [10]Opposition to Motion to Remand, Docket No. 16 (May 23, 2014).

15        [11]Order Denying Plaintiff's Motion to Remand; Granting Defendant's Motion to Dismiss;
16   Ordering Defendant to Show Cause Why Action Should Not Be Remanded For Lack of Subject Matter
     Jurisdiction, Docket No. 21 (June 16, 2014).  Although concluding that Zeppeiro had not identified
17   grounds for remand, the court concluded that Green Tree had not adequately pled its citizenship.
     Specifically, the court noted that Green Tree had alleged that it was a limited liability corporation whose
18   sole member was a corporation with its principal place of business in Florida.  It had not alleged the
     corporation's state of incorporation.  Accordingly, the court *sua sponte* ordered Green Tree to show
19   cause why the action should not be dismissed for lack of subject matter jurisdiction.  (*Id*. at 17.)  On
     June 17, 2014, Green Tree proffered evidence that its sole member, Walter Investment Management
20   Corporation, is a Maryland corporation with its principal place of business in Tampa, Florida.
     (Response to Order to Show Cause, Docket No. 22 (June 17, 2014)).  The court found this response
21   adequate and discharged the order to show cause on June 24, 2014.  (Order Discharging Order to Show
     Cause, Docket No. 24 (Jun. 24, 2014)).
22

23        [12]First Amended Complaint ("FAC"), Docket No. 26 (Jul. 3, 2014). Zeppeiro has abandoned his
24   HBOR claim under California Civil Code § 2924.11.

25        [13]Motion to Dismiss First Amended Complaint, Docket No. 29 (Jul. 18, 2014).  See also Reply
     in Support of Motion to Remand First Amended Complaint, Docket No. 33 (Oct. 2, 2014).
26
27        [14]Order Granting Defendant's Motion to Dismiss First Amended Complaint ("Order"), Docket
     No. 34 (Oct. 17, 2014) at 20.

28        [15]Second Amended Complaint ("SAC"), Docket No. 35 (Oct. 30, 2014).

1    to dismiss the complaint on November 11, 2014.[16]  Zeppeiro opposes the motion.[17]

2

3                        **I.  FACTUAL BACKGROUND**

4       **A.      Facts Alleged in the Complaint**

5           Zeppeiro alleges that on October 15, 2002, he obtained a mortgage loan from Homecomings

6    Financial Network, Inc. ("Homecomings") to finance residential property located at 6393 Calle Bodega,

7    Camarillo, California, 93012.[18]  He asserts that the servicer of the loan changed several times, that it

8    eventually became GMAC Mortgage, and that servicing was ultimately transferred to Green Tree on

9    February 1, 2013.[19]  In March 2013, Zeppeiro requested that Green Tree review his account for a loan

10   modification.[20]  In response, Green Tree sent Zeppeiro a loan modification application.[21]  In or about

11   April 2013, Zeppeiro allegedly submitted a full and complete application packet to Green Tree; he

12   asserts that this officially commenced loss mitigation options and triggered the newly enacted HBOR.[22]

13          Zeppeiro contends that Green Tree acknowledged the commencement of loss mitigation options

14   by performing an initial review of his application.[23]  He asserts that his attorneys contacted Green Tree

15   on a weekly basis after he submitted the application to ensure that it had all of the information needed.[24]

16   He contends that, nonetheless, on or about October 24, 2013, Northwest and Green Tree recorded a

17

18   _____

19   [16]Motion to Dismiss Second Amended Complaint ("Motion"), Docket No. 36 (Nov. 11, 2014).

20   [17]Opposition to Motion to Dismiss ("Opposition"), Docket No. 50 (Feb. 9, 2015).

21   [18]SAC, ¶ 13.

22   [19]*Id.*, ¶ 14.

23   [20]*Id.*, ¶ 16.

24   [21]*Id.*, ¶ 18.

25   [22]*Id.*, ¶ 19.

26   [23]*Id.*, ¶ 59.

27   [24]*Id.*, ¶ 20, Exh. A (Loan Modification Application).

28

notice of default and election to sell the property under the deed of trust.[25]  That same day, Green Tree sent Zeppeiro a notice stating that it had initiated foreclosure proceedings against the property.[26] Zeppeiro alleges that at no point did Green Tree give a single point of contact for purposes of the loan modification process.[27]

### B.   Green Tree's Request for Judicial Notice

Green Tree requests that the court take judicial notice of one document related to Zeppeiro's claims.  The document is a notice of rescission of the notice of default and election to sell, recorded October 31, 2013.[28]  The court previously took judicial notice of this document in deciding Green Tree's motion to dismiss the first amended complaint.[29]  Zeppeiro does not oppose Green Tree's request.

In deciding a Rule 12(b)(6) motion, the court generally looks only to the face of the complaint and documents attached thereto.  *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990).  A court must normally convert a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment if it "considers evidence outside the pleadings. . . .  A court may, however, consider certain materials – documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice – without converting the motion to dismiss into a motion for summary judgment."  *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003).  See *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (a court may consider "other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court

---

[25]*Id.*, ¶ 21, Exh. B (Notice of Default and Election to Sell Under Deed of Trust ("Notice of Default")).

[26]*Id.*, ¶ 22, Exh. C (October 24, 2013 Letter from Green Tree to Zeppeiro).

[27]*Id.*, ¶ 61.

[28]Green Tree's Request for Judicial Notice ("RJN"), Docket No. 40 (Nov. 17, 2014), Exh. 1 (Rescission of Notice of Default and Election to Sell).

[29]Order at 5-6.

may take judicial notice"); *Branch v. Tunnell* 14 F.3d 449, 453 (9th Cir. 1994) (noting that a court may consider a document whose contents are alleged in a complaint, so long as no party disputes its authenticity), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

The document Green Tree seeks to have the court judicially notice was recorded on November 1, 2013 by the Ventura County Clerk and Recorder.  It is time and date stamped and has a record number.  Other courts have taken judicial notice of such documents as public filings.  See *Velazquez v. GMAC Mortgage Corp.*, 605 F.Supp.2d 1049, 1057-58 (C.D. Cal. 2008) (taking judicial notice of documents recorded by the Los Angeles County Recorder's Office, including deeds of trust); see also *Krug v. Wells Fargo Bank, N.A.*, No. 11–CV–5190 YGR, 2012 WL 1980860, *2 (N.D. Cal. June 1, 2012) (public records are judicially noticeable under Rule 201); *Grant v. Aurora Loan Services, Inc.*, 736 F.Supp.2d 1257, 1264 (C.D. Cal. 2010) (noting that a "[party] provided a reference number for the document, showing that it was in fact recorded; this demonstrates that it is a public record"); *Fimbres v. Chapel Mortgage Corp.*, No. 09-CV-0886-IEG (POR), 2009 WL 4163332, *3 (S.D. Cal. Nov. 20, 2009) (taking judicial notice of a deed of trust, notice of default, notice of trustee's sale, assignment of deed of trust, and substitution of trustee as each was a public record); *Angulo v. Countrywide Home Loans, Inc.*, No. 1:09-CV-877-AWI-SMS, 2009 WL 3427179, *3 n. 3 (E.D. Cal. Oct. 26, 2009) ("The Deed of Trust and Notice of Default are matters of public record.  As such, this court may consider these foreclosure documents"); *Distor v. U.S. Bank NA*, No. C 09-02086 SI, 2009 WL 3429700, *2 (N.D. Cal. Oct. 22, 2009) (finding that a deed of trust, notice of default and election to sell under deed of trust, and notice of trustee's sale were matters of public record and thus proper subjects of judicial notice).  Accordingly, as it did previously, the court grants Green Tree's request for judicial notice.

## II.  DISCUSSION

### A.    Legal Standard Governing Motions to Dismiss Under Rule 12(b)(6)

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint.  A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory,"

or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).  The court must accept all factual allegations pleaded in the complaint as true, and construe them and draw all reasonable inferences from them in favor of the nonmoving party.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996); *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir. 1995).

The court need not, however, accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations.  See *Bell Atlantic Corp. v. Twombly*, 540 U.S. 544, 553–56 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").  Thus, a plaintiff's complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . .  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); see also *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)" (citations omitted)); *Moss v. United States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief," citing *Iqbal* and *Twombly*).

## B.    Whether Zeppeiro's § 2924(a)(6) Claim Is Adequately Pled

Green Tree first argues that Zeppeiro's § 2924(a)(6) claim must be dismissed as premature, because there has been no foreclosure sale.  Section 2924(a)(6) provides:

> "No entity shall record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest.  No agent of the holder of the beneficial interest under the mortgage or deed of trust, original trustee or

1    substituted trustee under the deed of trust may record a notice of default or otherwise

2    commence the foreclosure process except when acting within the scope of authority

3    designated by the holder of the beneficial interest." CAL. CIV. CODE § 2924(a)(6).

4   Green Tree appears to misconstrue Zeppeiro's § 2924(a)(6) claim as one for wrongful foreclosure;

5   Zeppeiro, however, no longer alleges a wrongful foreclosure claim as he did in the first amended

6   complaint.  Indeed, he was not granted leave to replead such a claim.[30]  The crux of Zeppeiro's §

7   2924(a)(6) claim is that neither Green Tree nor Northwest Trustee was the holder of the beneficial

8   interest under his mortgage and deed of trust and that despite this fact, they caused a notice of default

9   to be recorded against the property.  Zeppeiro also alleges that Northwest was not acting on behalf of

10   the original beneficiary, nor was it the substituted foreclosure trustee.[31]

11       Green Tree contends Zeppeiro's assertion that defendants were not the holders of the beneficial

12   interest under his mortgage or deed of trust is "inconsistent" with his allegation that he is currently in

13   loan modification discussions with Green Tree, and with his allegation that Green Tree "was purporting

14   [ ]to be the entity with [the] beneficial interest."  See, e.g., *Saravia v. Select Portfolio Servicing, Inc.*,

15   No. 13–cv–01921–RDB, 2014 WL 2865798, *7 (D. Md. June 23, 2014) ("With contradictory factual

16   allegations, the Court cannot find a claim with 'facial plausibility' under the standards as set forth in

17   *Iqbal*").  Once again, Green Tree misapprehends the thrust of Zeppeiro's allegations.  Zeppeiro alleges

18   that Green Tree was his loan servicer, and that it *purported* to hold a beneficial interest in the loan – not

19   that it actually owned the loan or had a beneficial interest in it.  The fact that Green Tree was allegedly

20   the loan servicer, moreover, does not necessarily mean that it held a beneficial interest in the note and

21   deed of trust.  See *Cervantes v. Countrywide Home Loans*, 656 F.3d 1034, 1038-39 (9th Cir. 2011)

22   ("After a borrower takes out a home loan, the original lender may sell all or a portion of its beneficial

23   interest in the loan and change loan servicers.  The owner of the beneficial interest is entitled to

24   repayment of the loan. . . .  The servicer of the loan collects payments from the borrower, sends

25

26       [30]Order at 20 (dismissing wrongful foreclosure claim with prejudice; granting leave to amend

27   limited to a stand-alone § 2924(a)(6) claim and UCL claim).

28       [31]SAC, ¶ 49.

1    payments to the lender, and handles administrative aspects of the loan").[32]

2          Zeppeiro's allegation that Northwest was not acting on behalf of the original beneficiary, and

3    was not the substituted foreclosure trustee is contradicted by the recession of the notice of default it

4    filed, which expressly states that it was the "Agent for the Beneficiary."[33]  The fact that the notice of

5    rescission indicates that Northwest was acting as the beneficiary's agent, however, does not indisputably

6    make it so.  The court nonetheless finds Zeppeiro's allegations that Green Tree was not the beneficial

7    owner of the mortgage and deed of trust, and that Northwest was not the beneficiary's agent and/or

8    substituted foreclosure trustee insufficient.  The allegations are conclusory and fail to state a plausible

9    claim for relief under *Twombly* and *Iqbal*.  Zeppeiro pleads no facts supporting his assertion that neither

10   Green Tree nor Northwest could properly file a notice of default under § 2924(a)(6).  See *Iqbal*, 556

11   U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the

12   court to draw the reasonable inference that the defendant is liable for the misconduct alleged.");

13   *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the

14   speculative level, on the assumption that all the allegations in the complaint are true (even if

15   doubtful in fact)").[34]  For this reason, his allegations are deficient and the § 2924(a)(6) claim must

16   therefore be dismissed.

17         Zeppeiro's § 2924(a)(6) claim fails for another reason – failure to allege damages adequately.[35]

18   _____

19   [32]Northwest Trustee, by contrast, is expressly designated as "Agent for the Beneficiary" on the
     rescission of notice of default. (See RJN, Exh. 1 (Rescission of Notice of Default and Election to Sell).)

20

21   [33]See RJN, Exh. 1 (Rescission of Notice of Default and Election to Sell).

22   [34]The court notes, moreover, that the damages remedy provided by § 2924.12 is available only

23   after a trustee's deed on sale has been recorded.  Prior to that time, only injunctive relief is available.
     See CAL. CIV. CODE § 2924.12(b) ("After a trustee's deed upon sale has been recorded, a mortgage

24   servicer, mortgagee, trustee, beneficiary, or authorized agent shall be liable to a borrower for actual
     economic damages. . .").  Compare CAL. CIV. CODE § 2924.12(a) (providing injunctive relief "[i]f a

25   trustee's deed upon sale has not been recorded").

26   [35]The court notes that many of the allegations in this cause of action do not relate in any way to

27   violation of § 2924(a)(6).  Although the claim includes allegations concerning the purported separation
     of the note and deed of trust, securitization, bad faith in the loan modification process, and failure to

28   supply a single point of contact, the court addresses only those allegations that could potentially support

At least one California district court has questioned whether "there [i]s any relief available for violations of § 2924." *Penermon v. Wells Fargo Bank, N.A.*, __ F.Supp.2d __, 2014 WL 2754596, *9 (N.D. Cal. June 11, 2014). In *Penermon*, the court ordered the parties to brief whether § 2924 authorized an award of money damages. After finding plaintiff's authority inapposite, the court dismissed the claim with leave to identify applicable statutory authority authorizing the recovery of money damages. It noted it did "not believe that it [wa]s authorized to provide money damages for a violation of § 2924 as it was excluded from 2924.12, which explicitly provides for statutory damages for various violations of HBOR and, therefore, the non-judicial foreclosure scheme." *Id.* at *10.[36]

The court finds *Penermon* persuasive. Section 2924.12 sets forth the statutory scheme for redressing violations of the HBOR; despite the fact that it references various other HBOR statutes, § 2924.12 does not mention § 2924(a). See, e.g., CAL. CIV. CODE § 2924.12 ("After a trustee's deed upon sale has been recorded, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall be liable to a borrower for actual economic damages pursuant to Section 3281, resulting from a material violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17"). See also Harry D. Miller and Marvin B. Starr, MILLER AND STARR CALIFORNIA REAL ESTATE 3D, § 10:185 n. 25 (3d ed. 2014) ("The statutory damages remedy is applicable only for violation of Civ. Code, §§ 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, 2924.17, and 2924.18"). Because the California legislature clearly provided money damages as a remedy for certain HBOR violations, but not for others, the court is constrained to conclude that it did not intend to permit the recovery of money damages for a § 2924(a)(6) violation. For that reason, Zeppeiro's claim for money damages resulting from defendants' alleged violation of § 2924(a)(6) is not cognizable, and must be dismissed for this reason as well.

Even if money damages are available for violation of § 2924(a)(6), moreover, Zeppeiro has failed adequately to plead an entitlement to such damages. As the court noted in its order granting Green Tree's motion to dismiss the first amended complaint, Zeppeiro fails to allege any cognizable

---

a claim under § 2924(a)(6).

[36]Civil Code § 2924.12

injury caused by defendants' purported statutory violation.[37]   The second amended complaint, whose allegations are in all relevant respects identical to the first amended complaint, does not plausibly plead that there was any cognizable injury caused by the purported violation.   The notice of default, recorded October 24, 2013, was rescinded seven days later on October 31, 2014.[38]   Zeppeiro alleges that as a result of defendants' conduct, he suffered general and special damages of not less than $5,000,000.   He asserts that these damages include emotional distress and the ruination of his credit and the equity in the home.   Zeppeiro does not plead any facts to support the conclusory assertion that defendants' purported violation of § 2924(a)(6) ruined his credit and equity in the home.   Nor does he allege facts showing how the ruination manifested itself.[39]   Zeppeiro's allegation that he suffered emotional distress damages is even more fundamentally flawed, however.   Under § 2924.12(b), "a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall be liable to a borrower for *actual economic damages . . . resulting from a material violation of [certain sections other than § 2924(a)(6)]*."   CAL. CIV. CODE § 2924.12(b) (emphasis added).   Thus, even if Zeppeiro could recover damages for defendants' purported violation of § 2924(a)(6), he could not recovery emotional distress damages.

The remainder of his damages allegations, i.e., anything that might be characterized as "actual economic damages," are entirely conclusory and lack any causal link to the purported § 2924(a)(6) violation.   Cf. *Copeland v. Lehman Bros. Bank, FSB*, No. 09 CV 1774 WQH RBB, 2010 WL 2817173, at *4 (S.D. Cal. July 15, 2010) ("Even reading the First Amended Complaint liberally, Plaintiff fails to plead non-conclusory factual allegations indicating how he was damaged by the alleged failure to fully respond to the QWR," citing *Allen v. United Fin. Mortg. Corp.*, 660 F.Supp.2d 1089, 1097 (N.D. Cal. 2009) ("Allen only offers the  conclusory statement that 'damages consist of the loss of plaintiff's home together with his attorney fees.'   He has not actually attempted to show that the alleged RESPA violations caused any kind of pecuniary loss (indeed, his loss of property appears to have been caused by his default)").

---

[37]Order at 10-11.

[38]RJN, Exh. 1 (Rescission of Notice of Default and Election to Sell).

[39]SAC, ¶ 65.

Zeppeiro makes passing reference to the fact he suffered a "ruination of his credit," but as noted, he alleges no facts as to how his credit suffered following the filing of the notice of default, as opposed to his failure to make timely mortgage payments.[40]  Such facts are particularly necessary as the notice of default was rescinded one week after it was filed.  Zeppeiro pleads no facts indicating that he suffered any form of specific economic harm during the week the notice of default was of record, nor any facts indicating that despite the filing of a notice of rescission, he suffered economic harm thereafter as a result of the filing of the notice of default.  Cf. *Mann v. Bank of Am., N.A.*, No. 13-CV-02293-CAS, 2014 WL 495617, *6 (C.D. Cal. Feb. 3, 2014) ("California courts routinely dismiss claims based on allegations of 'robo-signing' when irregularities in the signing or assignment of the security interests do not prejudice the borrower").  Further, because no foreclosure proceedings are pending – and certainly none based on the allegedly unlawful, but now  rescinded, notice of default – the court cannot grant Zeppeiro any injunctive relief.  For all of these reasons, his § 2924(a)(6) claim must once again be dismissed.

## C.      Whether Zeppeiro's UCL Claim Is Adequately Pled

"The UCL prohibits 'any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising.'" *Stearns v. Select Comfort Retail Corp.*, No. 08-2746 JF (PVT), 2010 WL 2898284 *16 (N.D. Cal. July 21, 2010) (quoting CAL. BUS. & PROF. CODE § 17200).  "'An act can be alleged to violate any or all of the three prongs of the UCL – unlawful, unfair, or fraudulent.'"  *Id.* (quoting *Berryman v. Merit Prop. Mgmt., Inc*., 152 Cal.App.4th 1544, 1554 (2007)).  The law is "sweeping, embracing anything that can properly be called a business practice and [that is] at the same time . . . forbidden by law." *Cel-Tech Communications, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999); *Palestini v. Homecomings Fin., LLC*, No. 10CV1049-MMA, 2010 WL 3339459, *9 (S.D. Cal. Aug. 23, 2010) (same).  California courts have held that "an action under the UCL is not an all-purpose substitute for a tort or contract action." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1150 (2003) (citations and internal quotation marks omitted).

---

[40]*Id.*, ¶ 64.

Green Tree argues that Zeppeiro's UCL claim must be dismissed because he does not allege sufficient facts to support his claim that it has violated various laws and thus engaged in unlawful practices under the UCL.  It also contends that a UCL plaintiff must allege injury in fact, and have "lost money or property as a result of [the] unfair competition," *Hall v. Time Inc.*, 158 Cal.App.4th 847, 849 (2008), and that Zeppeiro has not adequately pled injury in fact.[41]   A plaintiff must identify the underlying law on which his UCL claim is based to plead a claim based on the unlawful prong sufficiently.  See, e.g., *Hodges v. Apple Inc.*, Case No. 13–cv–01128–WHO, 2013 WL 4393545, *6 (N.D. Cal. Aug. 12, 2013) (dismissing a UCL claim under the unlawful prong because plaintiff had not "ple[ ]d with particularity that Apple violated any law"); *Sleep Science Partners v. Lieberman*, No. 09–04200 CW, 2010 WL 1881770, *12 (N.D. Cal. May 10, 2010) ("Plaintiff's UCL claim is dismissed with leave to amend.  Plaintiff must plead facts that identify the conduct of Sleeping Well that is actionable under the UCL, and specify whether it is unlawful – and if so, under what law"); *In re Actimmune Marketing Litigation*, No. C 08–02376 MHP, 2009 WL 3740648, *15 (N.D. Cal. Nov. 6, 2009) ("[Plaintiffs] must at a minimum [ ] identify the statutory or regulatory provisions that defendants allegedly violated").

In the second amended complaint, Zeppeiro asserts that defendants violated the UCL because they engaged in dual tracking, i.e., they initiated foreclosure proceedings while at the same time reviewing his loan modification application; acted in bad faith during the review process by failing to identify a qualified single point of contact in violation of California Civil Code § 2923.7; acted in bad faith by refusing to conclude the loan modification process and refusing to send written notice specifying the reasons for denial of the loan modification application in violation of Civil Code § 2429.11; failed to comply with Civil Code § 2924.17, which requires that an accurate and complete declaration accompany any notice of default; and failed to contact him in person to assess and explore foreclosure alternatives in violation of Civil Code § 2923.5.[42]

Although certain of Zeppeiro's factual allegations support his assertion that some of these

---

[41]Motion at 7.

[42]SAC, ¶ 68.

statutes were violated – e.g., that Green Tree engaged in dual tracking, and failed to identify a single point of contact – there are no facts, or insufficient facts, to support Zeppeiro's assertion that Green Tree engaged in the balance of the acts that form the basis of the UCL claim. The claim is therefore deficient to the extent based on these acts. *Khoury v. Maly's of California, Inc.,* 14 Cal.App.4th 612, 619 (1993) ("A plaintiff alleging unfair business practices under the[ UCL] must state with reasonable particularity the facts supporting the statutory elements of the violation"); see also *Saldate v. Wilshire Credit Corp*., 686 F.Supp.2d 1051, 1067 (E.D. Cal. 2010) ("The complaint lacks reasonable particularity of facts to support a UCL claim. The complaint's bare reference to federal statutes and common law claims provides not the slightest inference that Mr. Saldate has a viable UCL claim"). The court nonetheless addresses each purported violation of law in turn to decide whether it supports the UCL claim.

Zeppeiro asserts that defendants failed to conclude the loan modification process and refused to specify in writing the reasons for denial of his loan modification application in violation of Civil Code § 2924.11. It is unclear which of the many subsections of § 2924.11 Zeppeiro contends Green Tree violated. His reference to the fact that defendants failed to specify in writing the reasons why he did not receive a loan modification suggests he believes the statute concerns the denial of a loan modification application.[43] The statute, however, generally concerns a lender's obligations in the event the parties reach a temporary or permanent loan modification agreement. See CAL. CIV. CODE § 2924.11. Zeppeiro does not allege his loan modification application was approved in writing, and therefore cannot premise his UCL claim on a violation of § 2924.11. See *McFarland v. JP Morgan Chase Bank*, No. EDCV 13-01838-JGB, 2014 WL 4119399, *10 (C.D. Cal. Aug. 21, 2014) ("Nowhere in the FAC does [p]laintiff allege her loan modification application was approved in writing. In fact, it alleges the opposite – that her modification application has never been granted. The Court dismisses [plaintiff's § 2924.11] claim"). More fundamentally, although Zeppeiro asserts that § 2924.11 (or some other statute) requires a written statement of the reasons why a loan modification has been denied, the first amended complaint nowhere alleges that his loan modification application *has been* denied.

Zeppeiro's allegation that Green Tree committed an unlawful act under the UCL because it

---

[43]*Id.*

violated § 2924.17 fares no better.[44]  This section states that "[b]efore recording or filing any of the [foreclosure-related] documents described in subdivision (a), a mortgage servicer shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information."   See CAL. CIV. CODE § 2924.17(b).  The intent of the statute is to prohibit "the practice of robo-signing, in which servicers sign foreclosure documents without determining the right to foreclose." *Marquez v. Wells Fargo Bank, N.A.*, No. CV 13-2819 PJH, 2013 WL 5141689, *5 (N.D. Cal. Sept. 13, 2013).  Zeppeiro contends that Green Tree failed "to provide an accurate and truthful declaration attached to the notice of default."[45]  He does not allege that the notice of default was robo-signed, and he pleads no facts indicating why the declaration was false.  As a result, his conclusory assertion that the statute was violated does not suffice to state a plausible claim.  Given that the allegedly unlawful notice of default was rescinded, moreover, Zeppeiro pleads no facts indicating how the purported violation prejudiced or harmed him.  *Mann*, 2014 WL 495617 at *6 ("California courts routinely dismiss claims based on allegations of 'robo-signing' when irregularities in the signing or assignment of the security interests do not prejudice the borrower. . . .  Accordingly, the Court finds that plaintiffs cannot premise their claims on allegations of robo-signing, as plaintiffs have not shown how that robo-signing was prejudicial to their interests").  Consequently, the court cannot conclude that Zeppeiro has alleged a viable claim under the unlawful prong of the UCL based on a purported violation of a § 2924.17.

Civil Code § 2923.5 requires that before a notice of default is filed, a servicer must contact the borrower in person or by telephone to assess the borrower's financial situation and options to prevent foreclosure.  CAL. CIV. CODE § 2923.5; *Mabry v. Superior Court*, 185 Cal.App.4th 208, 213-14 (2010) ("Civil Code section 2923.5 requires, before a notice of default may be filed, that a lender contact the borrower in person or by phone to 'assess' the borrower's financial situation and 'explore' options to prevent foreclosure").  When a plaintiff pleads a cause of action for violation of § 2923.5, the only remedy available is postponement of the foreclosure sale.  See *Mabry,* 185

---

[44]*Id.*

[45]*Id.*

Cal.App.4th at 235 ("We would merely note that under the plain language of section 2923.5, read in conjunction with section 2924g, the only remedy provided is a postponement of the sale before it happens").  Thus, where a violation of § 2923.5 is the predicate for a claim under the UCL's unlawful prong, the available remedy is an injunction against conducting the foreclosure sale until the lender assesses the borrower's financial status and explores options to avoid foreclosure.  See *Olds v. Metlife Home Loans*, No. SACV 12–55 JVS (RNBx), 2012 WL 10420298, *4 (C.D. Cal. Mar. 19, 2012); see also *Robinson v. Bank of America*, No. 12–CV–00494–RMW, 2012 WL 1932842, *10 (N.D. Cal. May 29, 2012) ("As discussed above, the court finds that plaintiff has stated a claim under both [§ 2923.5 and 2924.]  The court therefore denies the motion to dismiss the UCL claim insofar as it seeks injunctive relief. However, because the only remedy available under Sections 2923.5 and 2924 is the postponement of the foreclosure sale, plaintiff's prayer for restitution under the UCL is dismissed").  But see *Rivac v. NDEX West LLC*, No. C 13–1417 PJH, 2013 WL 3476659, *9 (N.D. Cal. July 10, 2013) (concluding that "plaintiffs cannot base a UCL claim on a violation of the due diligence requirements of Civil Code § 2923.5, as the remedy for violation of § 2923.5 is limited to postponement of the foreclosure sale").  This is effectively the equivalent of the statutory remedy.         The problem with Zeppeiro's invocation of § 2923.5 is that the notice of default was rescinded and there is no foreclosure sale pending.  Consequently, he cannot base a UCL claim in Green Tree's purported failure to comply with the statute.  See, e.g., *Crane v. Fargo*, Case No.: CV 13–01932 KAW, 2014 WL 1285177, *7 (N.D. Cal. Mar. 24, 2014) ("Although Plaintiff identifies §§ 2923.4 and 2923.5 as the underlying statutes [that support his UCL claim], this Court finds that since the notice of default has been rescinded and there is no sale pending, Plaintiff's claims that Wells Fargo violated those statutes must be dismissed with prejudice"); see also *Croshal v. Aurora Bank, F.S.B.*, Case No.: C 13–05435 SBA, 2014 WL 2796529, *7 (N.D. Cal. June 19, 2014) ("It is undisputed that a Notice of Trustee's Sale has not been recorded.  Therefore, because there is no trustee's sale to postpone, Plaintiff's claim is unripe. Accordingly, Plaintiff's third claim for relief is DISMISSED"); *Tamburri v. Suntrust Mortgage, Inc.*, Case No. 11–cv–02899–JST, 2013 WL 4528447, *4 (N.D. Cal. Aug 26, 2013) ("Here, no sale has occurred and none is pending because the second notice of default, which gave rise to this action,

1   has been rescinded.  Section 2923.5 does not provide any relief beyond that which Plaintiff has

2   already obtained.  Consequently, Defendants' motions for summary judgment on Plaintiff's first

3   cause of action will be granted and judgment entered in their favor on Plaintiff's section 2923.5

4   claim").

5        Zeppeiro's § 2923.6 and § 2923.7 claims require additional scrutiny.  Zeppeiro alleges that Green

6   Tree violated Civil Code § 2923.6(c), which prohibits "dual tracking."[46]  Section 2923.6(c) states that

7   "[i]f a borrower submits a complete application for a first lien loan modification offered by, or

8   through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or

9   authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale,

10  while the complete first lien loan modification application is pending."  CAL. CIV. CODE § 2923.6(c).

11   Zeppeiro alleges that he submitted a complete loan modification application in approximately April

12  2013, and that Green Tree filed a notice of default on October 24, 2013, while the application was still

13  pending.  These facts suffice to allege a violation of the statute and a potentially unlawful practice under

14  the UCL.  Zeppeiro, however, fails to allege facts indicating that he suffered any redressable injury as

15  a result of the violation, because the notice of default was rescinded seven days after it was recorded.

16  If the notice had not been rescinded, the court could presumably have entered an injunction precluding

17  defendants from proceeding with a foreclosure sale based on the notice of default.  Additionally, as the

18  court noted in its order dismissing the first amended complaint, if Zeppeiro paid defendants any sums

19  of money to secure recordation of the notice of rescission, the court might be able to order restitution

20  of those sums to him.[47]  Cf. CAL. CIV. CODE § 2924.12(a)(1) ("If a trustee's deed upon sale has not been

21  recorded, a borrower may bring an action for injunctive relief to enjoin a material violation of Section

22  . . . 2923.6"); *Banuelos v. Nationstar Mortgage, LLC*, No. 13-CV-05308 HRL, 2014 WL 1246843, *3

23  (N.D. Cal. Mar. 25, 2014) (stating that a plaintiff can recover "actual economic damages pursuant to

24  Section 3281, resulting from a material violation of Section [ ] 2923.6 . . . where the violation was not

25  corrected and remedied prior to the recordation of the trustee's deed upon sale"); see also CAL. CIV.

26  _____

27  [46]*Id.*

28  [47]Order at 17.

1   CODE § 2924.12(c) ("A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not

2   be liable for any violation that it has corrected and remedied prior to the recordation of a trustee's deed

3   upon sale, or that has been corrected and remedied by third parties working on its behalf prior to the

4   recordation of a trustee's deed upon sale").  Here, the notice of default was rescinded before a

5   foreclosure sale took place.  Zeppeiro alleges no facts indicating that he provided any consideration to

6   defendants to secure rescission of the notice of default.  Consequently, Zeppeiro has not stated a viable

7   claim under the unlawful prong of the UCL for violation of § 2923.6.

8        Civil Code § 2923.7(c) requires that a mortgage servicer must, upon the borrower's request,

9   identify an employee who will serve as the borrower's single point of contact and remain assigned to

10  the borrower's account until the mortgage servicer determines that all loss mitigation options have been

11  exhausted or the borrower's account has been brought current.[48]  Zeppeiro's complaint alleges that

12  defendants "fail[ed] to establish a single point of contact upon [his] request."[49]  Although Zeppeiro could

13  have pled additional facts, this suffices to allege that he made a specific request for a single point of

14  contact and defendants failed to provide one.  Accordingly, Zeppeiro has adequately alleged a violation

15  of § 2923.7.  Compare *Williams v. Wells Fargo Bank, NA*, No. CV 13–02075 JVS (DTBx), 2014 WL

16  1568857,  *8 (C.D. Cal. Jan. 27, 2014) ("[T]he text of section 2923.7 requires that the borrower make

17  a specific request for a single point of contact.  The Complaint does not allege that Plaintiffs made any

18  such request"); *Saber v. JPMorgan Chase Bank, N.A.*, No. CV 13-00812-DOC, 2014 WL 255700,

19  *3 (C.D. Cal. Jan. 23, 2014) ("Plaintiff's SAC states only that Defendant failed to provide him with

20  a single point of contact, and lists a series of statutory responsibilities.  Plaintiff again does not allege

21  any additional facts to support the conclusion Defendant violated § 2923.7.  Listing the obligations

22  for which the single point of contact is responsible does not allege any new facts to support the

23  

---

24     [48]Civil Code § 2923.7 provides: "Upon request from a borrower who requests a foreclosure
    prevention alternative, the mortgage servicer shall promptly establish a single point of contact and

25  provide to the borrower one or more direct means of communication with the single point of contact.
    . . .  The single point of contact shall remain assigned to the borrower's account until the mortgage

26  servicer determines that all loss mitigation options offered by, or through, the mortgage servicer have
    been exhausted or the borrower's account becomes current." CAL. CIV. CODE § 2923.7(a), (c).

27  

28     [49]SAC, ¶ 68.

conclusion espoused by Plaintiff. . . .  Therefore, Plaintiff's section 2923.7 claim is DISMISSED").

Because Zeppeiro fails adequately to allege a violation of Civil Code §§ 2924.11, 2924.17 and 2923.5, his UCL claim fails to the extent based on these statutes.  To the extent Zeppeiro's UCL claim is based on his § 2924(a)(6) claim, it must be dismissed because the underlying claim is deficient.  See, e.g., *Krantz v. BT Visual Images, L.L.C.*, 89 Cal.App.4th 164, 178 (2001) (noting that a UCL claim is "incidental to and depend[s] upon the validity (or invalidity) of the preceding claims for relief," and therefore "stand[s] or fall[s] depending on the fate of the antecedent substantive causes of action"); see also *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1203 (9th Cir. 2001) (affirming the dismissal of a UCL claim where underlying negligence and fraud claims were deficient); *Khan v. CitiMortgage, Inc.*, 975 F.Supp.2d 1127, 1146 (E.D. Cal. 2013) ("The FAC lacks facts of an unlawful, unfair or fraudulent business practices to support a UCL claim, despite Ms. Khan's unsubstantiated claims. . . .  As demonstrated throughout this order, the complaint's claims fail and thus cannot serve as a predicate violation for a UCL claim"); *Bejou v. Bank of Am., N.A.*, No. CV 13–0125 LJO SMS, 2013 WL 1759126, *5 (E.D. Cal. Apr. 24, 2013) ("Reliance on other invalid claims fails to support a viable UCL claim"); *Newsom v. Countrywide Home Loans, Inc.*, 714 F.Supp.2d 1000, 1010 (N.D. Cal. 2010) ("Where a plaintiff cannot state a claim under the 'borrowed' law, he or she cannot state a UCL claim either"); *Hutson v. American Home Mortgage Servicing, Inc.*, No. CV 09-1951 PJH, 2009 WL 3353312, *15 (N.D. Cal. Oct. 16, 2009) ("To the extent plaintiffs' section 17200 claim is predicated on American Home's violations of TILA and its regulations, it fails as a matter of law.  Plaintiffs' TILA rescission and damages claims are time-barred as noted above, and thus their UCL claim based on TILA violations likewise fails"); *Singh v. Wells Fargo Bank, N.A.*, No. CV 09-2035 SC, 2009 WL 2365881, *5 (N.D. Cal. July 30, 2009) (dismissing a UCL claim because it was based on fraud and discrimination claims the court had already found deficient).

Green Tree also argues that the claim must be dismissed in all respects – including to the extent based on dual tracking and failure to provide a single point of contact – because Zeppeiro has not adequately alleged that he suffered injury in fact as a result of its conduct, and therefore lacks standing

to bring the claim.[50]  "[A] plaintiff must have suffered an injury in fact and have lost money or property as a result of [the] unfair competition to have standing to pursue either an individual or a representative claim under the California unfair competition law." *Hall*, 158 Cal.App.4th at 849 (citing CAL. BUS. & PROF. CODE § 17204); see also *Plastino v. Wells Fargo Bank*, No. C 12–01037 CRB, 2012 WL 2061515, *6 (N.D. Cal. June 7, 2012); *Jensen v. Quality Loan Service Corp.*, 702 F.Supp.2d 1183, 1199 (E.D. Cal. 2010); *Paulus v. Bob Lynch Ford, Inc.*, 139 Cal.App.4th 659, 677 n. 13 (2006) ("Proposition 64's[51] provisions . . . chang[ed] the language of the [UCL] to read that a person could bring suit only if the person 'has suffered injury in fact and has lost money or property as a result of such unfair competition.' . ."); *Harris*, 138 Cal.App.4th at 33 (California Business and Professions Code § 17203 "now requires that relief may be sought only by persons who have themselves suffered injury").

In his complaint, Zeppeiro alleges that he has suffered injury in fact "in that [he] has been unable

---

[50]Motion at 6-7.

[51]On November 2, 2004, California voters passed Proposition 64; it took effect the following day, in accordance with Article II, Section 10 of the California Constitution.  *Lyons v. Chinese Hosp. Ass'n*, 136 Cal.App.4th 1331, 1336 n. 2 (2006); see also *R&B Auto Ctr., Inc. v. Farmers Group, Inc.*, 140 Cal.App.4th 327, 359 (2006).  Proposition 64 amended the Business and Professions Code to require that persons suing as "private attorneys general" or on behalf of others show that they have suffered injury as a result of an allegedly unfair business practice.  See CAL. BUS. & PROF. CODE § 17535 ("Any person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of this section. . ."); *id.*, § 17204 ("Actions for any relief pursuant to this chapter shall be prosecuted exclusively . . . by the Attorney General or any district attorney . . . or upon the complaint of any board, officer, person, corporation or association or by *any person who has suffered injury in fact and has lost money or property as a result of such unfair competition*" (emphasis added)); see also *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 323 (2011) ("Proposition 64 requires that a plaintiff have 'lost money or property' to have standing to sue.  The plain import of this is that a plaintiff now must demonstrate some form of economic injury"); *Paulus*, 139 Cal.App.4th at 677 n. 13 ("Proposition 64's provisions . . . chang[ed] the language of the [UCL] to read that a person could bring suit only if the person 'has suffered injury in fact and has lost money or property as a result of such unfair competition.' . . ."); *Harris v. Investor's Business Daily, Inc.*, 138 Cal.App.4th 28, 33 (2006) (California Business and Professions Code § 17203 "now requires that relief may be sought only by persons who have themselves suffered injury"); *Feitelberg v. Credit Suisse First Boston, LLC*, 134 Cal.App.4th 997, 1010 (2005) (Proposition 64 amendments "limit private representative actions to persons who . . . meet the standing requirements set forth in section 17204, which include injury in fact").

20

to [obtain] a good faith review for any loss mitigation options, including a loan modification."[52]  He also contends that he has suffered "diminution" in his credit rating.[53]  "A plaintiff suffers an injury in fact for purposes of standing under the UCL when he or she has: (1) expended money due to the defendant's acts of unfair competition; (2) lost money or property; or (3) been denied money to which he or she has a cognizable claim." *Marilao v. McDonald's Corp*., 632 F.Supp.2d 1008, 1012 (S.D. Cal. 2009) (citing *Hall*, 158 Cal.App.4th at 854–55).  "This statutory limitation requires that a plaintiff show he has suffered losses capable of restitution," as restitution and an injunction are the only remedies available for violation of the UCL.  *Small v. Mortgage Electronic Registration Systems, Inc*., Nos. 09–cv–0458, 2:10–cv–0342, 2010 WL 3719314, *12 (E.D. Cal. Sept.16, 2010) (internal citations omitted).  "Ordinarily when we say someone has 'lost' money we mean that he has parted, deliberately or otherwise, with some identifiable sum formerly belonging to him or subject to his control; it has passed out of his hands by some means, such as being spent or mislaid."  *Silvaco Data Systems v. Intel Corp*., 184 Cal.App.4th 210, 244 (2010).

Neither form of injury Zeppeiro alleges is of this type.  At the hearing, his lawyer disputed this conclusion.  He argued that Green Tree's failure to approve Zeppeiro for a loan modification when he first sought one had led to higher arrearages, late fees, foreclosure fees, and interest charges.  The complaint contains no allegations, however, that Zeppeiro has made any payments on his mortgage since defaulting.  As noted, UCL damages claims are limited to restitution; "[t]o show [entitlement] to restitution, a plaintiff must demonstrate that the defendant is in possession of money or property taken from [him or] her."  See *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F.Supp.3d 1306, 1324 (C.D. Cal. 2013); *Groupion, LLC v. Groupon, Inc.*, 859 F.Supp.2d 1067, 1083 (N.D. Cal. 2012) (holding that restitution was unavailable because plaintiff "ha[d] not submitted any evidence or . . . argument, to show that [defendant] obtained money from [plaintiff] or that [plaintiff] otherwise ha[d] any ownership interest of any of [defendant's] profits," citing *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal.App.4th 663, 699 (2006) (a plaintiff can seek money or property as restitution only when the "money or property

---

[52]SAC, ¶ 76.

[53]*Id.*

identified as belonging in good conscience to the plaintiff [can] clearly be traced to particular funds or property in the defendant's possession")); *Hill v. Opus Corp.*, 464 B.R. 361, 394 (C.D. Cal. 2011) (restitution is not available where the money claimed by plaintiff cannot be "traced to any particular funds in [defendants'] possession"); *EchoStar Satellite Corp. v. NDS Group PLC,* No. SA CV03–0950 DOC, 2008 WL 4596644, *9 (C.D. Cal. Oct. 15, 2008) ("Restitution under the UCL is only available where the sum at issue can clearly be traced to particular funds or property in the defendant's possession. . . .  As the Court previously recognized, NDS never directly took anything from EchoStar. . . .  Simply put, it is plain that EchoStar is seeking to dress up its unsuccessful damages claim as one for restitution under the UCL.  However, such relief is not available" (internal quotation marks and citations omitted)); see also *Bank of the West v. Superior Court,* 2 Cal.4th 1254, 1268 (1992) (when restitution is ordered, "defendant is asked to return something he wrongfully received; he is not asked to compensate the plaintiff for injury suffered as a result of his conduct").  The fact that Zeppeiro does not allege that he paid defendants any of the additional arrearages, late fees, foreclosure fees, or interest charges his lawyer mentioned at the hearing makes his UCL claim deficient and subject to dismissal.

More fundamentally, it is well settled that § 2923.5 and § 2923.7 do "not create a right to a loan modification."  *Rockridge Trust v. Wells Fargo, N.A.*, 985 F.Supp.2d 1110, 1153 (N.D. Cal. 2013) (quoting *Roberts v. JP Morgan Chase Bank, N.A.*, No. 09-CV-01855-LHK, 2011 WL 864949, *4 (N.D. Cal. Mar. 11, 2011), in turn citing *Mabry v. Superior Court,* 185 Cal.App.4th 208, 231 (2010) ("[T]here is  no right, for example, under the statute, to a loan modification")); see also *Katsch v. JP Morgan Chase*, No. 5:14-CV-04730-BLF, 2015 WL 534584, *4 (N.D. Cal. Feb. 9, 2015) ("The fact that Chase did not grant him a loan modification is insufficient, as a lender has no obligation to grant modification even if the applicant is qualified"); *Kaufman v. JPMorgan Chase Bank, N.A.*, No. 2:14-CV-02217-ODW, 2014 WL 2094284, *3 (C.D. Cal. May 20, 2014) ("Kaufman has no right to a loan modification under state or federal law"); *Pazargad v. Wells Fargo Bank, N.A.*, No. CV 11-4524 ODW PJWX, 2011 WL 3737234, *4 (C.D. Cal. Aug. 23, 2011) ("[T]here is no right under California law to a loan modification").  Thus, because he was not entitled to a loan modification, Zeppeiro's attempt to hinge his damages on Green Tree's purported failure to grant a loan modification is unavailing.

Similarly, as noted, because the notice of default was rescinded, there has been no foreclosure sale, and Zeppeiro does not allege that he paid defendants any form of consideration to secure rescission of the notice of default. Accordingly, he has suffered no injury in fact to the extent the UCL claim is premised on a violation of Civil Code § 2923.6(c). Zeppeiro has thus failed adequately to allege that he has standing to assert a UCL claim. This provides another basis upon which the UCL claim must be dismissed.

### D.    Whether the Court Should Grant Leave to Amend

Green Tree argues that Zeppeiro's complaint should be dismissed with prejudice. Zeppeiro has now had three opportunities to plead viable claims, and the court has passed on the adequacy of the claims in each complaint in deciding motions to dismiss filed by Green Tree. Despite the fact that the court has issued detailed rulings suggesting how Zeppeiro might be able to allege facts sufficient to state viable claims for relief, or show he has suffered a cognizable injury, Zeppeiro has filed substantially identical complaints that fail to cure the deficiencies noted by the court. In its prior order dismissing the first amended complaint, the court cautioned Zeppeiro that if he failed to cure the defects noted in the order in any second amended complaint, it would likely find any further attempt to amend futile and dismiss the claims with prejudice.[54] See *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008) ("Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment"); *California ex rel. California Department of Toxic Substances Control v. Neville Chemical Co.*, 358 F.3d 661, 673 (9th Cir. 2004) ("[D]enial of leave to amend is appropriate if the amendment would be futile," citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). In his opposition, Zeppeiro makes no argument that suggests he can amend his complaint to allege a viable § 2924(a)(6) or UCL claim. See *Broam v. Bogan*, 320 F.3d 1023, 1032 n. 2 (9th Cir. 2003) ("Facts raised for the first time in plaintiff's opposition papers should be considered by the court in determining whether to grant leave to amend or to dismiss the complaint with or without prejudice."). Because Zeppeiro has realleged the same deficient allegations each time the court has granted him leave to amend, and because he does not indicate he can cure the deficiencies, the court finds that granting leave to amend would be futile,

---

[54]Order at 20.

and thus dismisses the action with prejudice.

## III.  CONCLUSION

For the reasons stated, the court grants Green Tree's motion to dismiss in full.  Dismissal is with prejudice.

DATED: April 15, 2015

_____
MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE